EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANGEL LUIS SANTIAGO AGRICOURT, acusado y apelante.

*Número:* CR-78-29     *Resuelto:* 30 de marzo de 1979

*Pedro A. Otero Fernández,* abogado del apelante; *Héctor A. Colón Cruz, Procurador General* y *Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogados de El Pueblo.

SENTENCIA

El apelante fue convicto por tribunal de derecho en tres delitos menos graves consistentes en infracciones de los Arts. 6, 7 y 32 de la Ley de Armas de Puerto Rico, y sentenciado a seis meses de cárcel en cada caso a cumplirse consecutivamente en dos de los casos y en concurrencia con el tercero, para un total de 12 meses, o sea un año de cárcel.

Apeló y el 15 de enero de 1979 oímos argumento en vista oral por la defensa y el Procurador General, quedando el caso sometido para decisión.

En su alegato el apelante fragmenta sus planteamientos en sendos señalamientos de error que pueden sintetizarse así: (1) violación del derecho a juicio rápido; (2) "conducta antiética y corrupta" del fiscal que fue causa de demora del juicio; (3) infracción del debido proceso de ley durante el juicio por (a) no requerir la comparecencia del testigo Martínez Purcell, renunciado por el fiscal; (4) eliminación del fiscal como testigo de cargo en el juicio; (5) "no poner a disposición del acusado apelante la oportunidad de ver su juicio por jurado"; (6) imposición de una sentencia ilegal (a) por ser contraria a las Leyes Núms. 8 y 9 de 1971 sobre penas en los delitos menos graves, y (b) al Art. 63 del Código Penal y teoría de concurso de delitos; y (7) pasión y prejuicio en el juez sentenciador que lo llevó a condenar con prueba increíble e insuficiente.

(1) El planteamiento de tardanza por el acusado se limita a la vista preliminar en segunda instancia, o sea, ante el Tribunal Superior. La vista preliminar ante el Tribunal de

Distrito tuvo lugar el 3 de diciembre de 1974 y el 5 de diciembre siguiente la juez que intervino dictó la resolución de no-causa probable. Sesenta y seis (66) días después, el 10 de febrero de 1975, el fiscal solicita nueva vista en segunda instancia, que tuvo lugar el 11 de marzo siguiente, o sea en un mes.

La Regla 24(c) de Procedimiento Criminal que autoriza al fiscal a "someter el asunto con la misma o con otra prueba a un magistrado de categoría superior" no fija plazo, pero en *Pueblo* v. *Vélez Castro*, 105 D.P.R. 246, 248 (1976), consideramos razonable a tales fines un término de 60 días. El derecho a juicio rápido "es una cuestión puramente relativa . . . que no excluye los derechos de la justicia pública . . . y que el hecho de que pueda radicarse una nueva acusación en casos de delitos graves demuestra que el término de 120 días establecido en la Regla 64 no es el único factor determinante de que se ha violado el derecho que reconoce la Constitución." *Pueblo* v. *Reyes Herrans*, 105 D.P.R. 658, 664 (1977); confirmando a *Hernández Pacheco* v. *Flores Rodríguez*, 105 D.P.R. 173 (1976), donde sostuvimos que este derecho fundamental evade "la tiesa aritmética de la Regla." Teniendo en cuenta las circunstancias que concurren en este caso esta norma de razonabilidad no aparece vulnerada en ausencia de alegación y prueba de que la tardanza en celebrar la vista hubiese derrotado los medios de defensa del acusado, colocándolo en situación de indefensión.

Tampoco se violó el derecho a que se ventilara el juicio en la acusación por Art. 6, Ley de Armas, dentro de los 120 días siguientes a la presentación de la acusación. (R.P.C. 64(n)(4). El récord es elocuente sobre el particular. A las págs. 6 y ss. T.E. IV, [*sic*] se recogen los procedimientos de comienzo del juicio el día 19 de mayo de 1975, cuya suspensión pide el abogado defensor fundada primero en que "tengo imperiosa necesidad de firmar las escrituras en el día

de hoy" (L 12–14) y luego porque "no nos sentimos bien" (Pág. 7 L 20). Al denegar la suspensión manifiesta el juez:

"Compañero, el compañero el 13 de febrero del '75 el compañero no compareció y se señaló para el 7 de abril del '75. En dicha fecha, que fue llamado el caso para vista, el compañero tampoco compareció a esa vista. Si no hicimos gestiones de que el compañero compareciera para verlo ese día es porque además el Fiscal manifestó no estar preparado. Pero ya es una vez adicional que la defensa no comparece. Se llama para hoy y hoy tampoco comparece el abogado. Me dice que ha radicado una moción hace unos días así que No Ha Lugar. Se va a ver el caso en el día de hoy. Llámese. Lectura de la acusación y alegación. ¿Cuál es la alegación? ¿Desea que se den lectura a las acusaciones o se dan por leídas?" T.E. IV, pág. 7.

(2) A la fecha de celebración del juicio en 19 de mayo de 1975, no se había resuelto *Vélez Castro* ante, por lo que el tribunal ni las partes podían guiarse por el término de 60 días para el fiscal solicitar vista preliminar en segunda instancia. El fiscal, explicando por qué no había ido antes en alzada, se expresó así:

"No, Vuestro Honor. Las Reglas de Procedimiento Criminal no disponen término. Y la regla que se aplicaría en este caso y en esta moción es aquella que indica que el Fiscal podrá apelar de una determinación de no causa probable o podrá ir en alzada a cualquiera determinación por un delito distinto o más bajo del que le imputan. El legislador no señaló término. Al no señalar término le da al Fiscal y al Pueblo la facultad de radicar dentro de los términos prescriptivos de los delitos. No es término de la regla 64. Si la regla no me prohibe ni me pone una camisa de fuerza, el Fiscal tiene que hacer una serie de evaluaciones posteriores, como se hicieron en este caso, para determinar su curso de acción. Y quiero llevar al récord que hubo una conversación porque había un acusado, donde este acusado fue perjudicado y había cierta relación entre todas estas partes y estuvo en el pensamiento de ver cómo se compaginaban los hechos. En la teoría de 'latshes' [sic] es requisito de ley y la jurisprudencia que se demuestre perjuicio causado. Aquí no se ha demostrado y Su Señoría se ha podido dar cuenta que la Vista Preliminar se celebró el 5 de diciembre del '74." T.E. IV, págs. 15–16.

Todo cuanto se deduce de esta expresión es el propósito del fiscal de examinar en conjunto la prueba de este caso con la de otro relacionado en que el apelante era a su vez el perjudicado. No a otra cosa puede referirse la frase "ver cómo se compaginaban los hechos." Es injusta la imputación del apelante al fiscal de que al así actuar "estaba utilizando la maquinaria judicial para ayudar a unos y perjudicar a toda costa a otros" y la calificación de "conducta antiética y corrupta." La amplísima libertad del abogado para defender a su cliente no comprende derecho alguno a formular tan grave acusación sin fundamento en el récord.

(3) El testigo José Luis Martínez Purcell, anotado al dorso de la acusación como testigo del Pueblo, no compareció a juicio y el fiscal procedió con su caso prescindiendo de su testimonio. El acusado alega error porque no fue obligado a comparecer para "entrevistarlo" y otra vez el récord sostiene la corrección de la decisión del juez. Veamos:

"Hon. Fiscal:

Vuestro Honor, queremos informar al Tribunal que el testigo Purcell, el cual es testigo de El Pueblo, no se encuentra presente en el día de hoy porque no hemos logrado citarlo, sin embargo, estamos preparados para ver el caso.

Hon. Juez:

Bien.

Lcdo. Otero:

Honorable Juez, vamos a pedir al Tribunal que se citen esos testigos entonces y se hagan comparecer al Tribunal, que se cite a este testigo y se haga comparecer al Tribunal.

Hon. Fiscal:

¿Como testigo de defensa?

Hon. Juez:

¿Como testigo de defensa?

Lcdo. Otero:

No, como testigo de El Pueblo. Está señalado como testigo de El Pueblo y no está aquí presente.

HON. JUEZ:

El compañero Fiscal ve los casos con los testigos que quiere. Si lo quiere como testigo de defensa el Tribunal lo trae.

LCDO. OTERO:

Hay una incomparecencia del señor que fue legítimamente .citado y lo menos que el Tribunal puede hacer es citarlo por desacato por su incomparecencia.

HON. JUEZ:

Eso lo determina el Tribunal. ¿No lo desea como testigo de defensa?

LCDO. OTERO:

Lo que deseo es entrevistarlo como testigo de El Pueblo. Si lo voy a entrevistar o no, no lo sé en este momento.

HON. JUEZ:

Pues, no ha lugar a la solicitud de la defensa. Juramento a los testigos de El Pueblo." T.E. III, págs. 10–11.

(4) El hecho de que el Fiscal Méndez Correa declarara como testigo en la etapa inicial ante el juez instructor, no imponía su inclusión automática como testigo en el juicio. No surge de autos que el fiscal tuviera conocimiento directo de los hechos que le permitiera aportar evidencia admisible en el juicio. Ya hemos resuelto que el fiscal puede limitar el número de testigos a los que considere suficiente para sostener la acusación. *Pueblo* v. *Flores Berty*, 92 D.P.R. 577 (1965).

(5) Es innecesario considerar si el apelante tenía derecho a que los casos menos graves se vieran ante un jurado por haber determinado el juez sentenciador que dos de las sentencias se cumplieran consecutivamente, ya que entendemos que procede modificar las sentencias apeladas en el sentido de que todas se cumplan concurrentemente.

(6) En *Pueblo* v. *Fonseca*, 79 D.P.R. 36, 38 (1956), sostuvimos que el Art. 44 (hoy 63) del Código Penal no opera en la acusación simultánea por portación y posesión de un arma de fuego y Art. 32 de la Ley de Armas porque son

"violaciones de ley distintas y separadas" ([1]) que se "consuma[n] bajo circunstancias y normas de ley distintas que excluyen la posibilidad de confusión (*merger*) de los mismos." Se ajustan a derecho, por tanto, las sentencias impuestas al apelante, en ninguno de cuyos delitos separados la pena excede de seis meses.

(7) La prueba de cargo, correctamente resumida por el Procurador, es la siguiente:

"El testigo Jesús Ramos Ayala, a pregunta del Ministerio Público, declaró que es director del Hogar Crea en Trujillo Alto. Conoce al apelante y el día de los hechos, 4 de septiembre de 1974, lo vio en la Fiscalía de San Juan en horas de la tarde (de 1:00 a 1:30 P.M.).

Añade que acompañó al señor Juan José García a la Fiscalía, quien se encontraba acompañado de la señora Rosaura Medina Rivera ex-esposa del apelante, y mientras esperaba se presentó el apelante. Después de hablar con el fiscal, se dirigieron hasta el automóvil el cual estaba estacionado cerca del Teatro Tapia y vuelve a ver al apelante.

Declara que el apelante llamó al señor García y le dijo que quería hablar con él. Fue entonces que el apelante comenzó a insultar a la señora Medina y a proferir palabras obscenas. Luego introdujo su mano en maletín negro que traía consigo y sacó una pistola negra.

Manifiesta el testigo que el apelante le dijo a la señora 'hija de la gran puta te voy a matar' (T.E., Tomo 4, pág. 6) y él oyó un sonido de 'click'. Cuando oyó este sonido el apelante tenía la pistola en la mano y apuntaba a la señora Medina quien trató de ocultarse detrás del señor Purcell. Vuelve a oír el mismo sonido de 'click' y el señor Purcell trata de abalanzarse sobre el apelante mientras que García hace un intento de sacar su revólver, el cual se quedó trabado en su gabán. Añade que el ape-

---

([1]) Ordena el Art. 43 de la Ley de Armas (25 L.P.R.A. sec. 453):
*Proceso como impedimento para otra acción*
"El proceso y castigo de cualquier persona por cualquiera de los delitos definidos y castigados por este Capítulo no impedirá el proceso y castigo de la misma persona por cualquier otro acto u omisión en violación de cualquiera de las demás disposiciones de este Capítulo, del Código Penal, Título 33, o de cualquiera otra ley."

lante huyó hacia el Teatro Tapia." Informe del Procurador General, págs. 22–23.

No se justifica intervenir con su apreciación por el juez sentenciador. *Pueblo* v. *Torres Montañez*, 106 D.P.R. 125 (1977).

La imputación de pasión, prejuicio y parcialidad al juez porque se negó a suspender el juicio, rehusó mantener al acusado bajo fianza antes de dictar sentencia y tardó en resolver una moción de reconsideración, no merece más análisis del señalamiento y sí un recordatorio de que la grave atribución de prejuicio y parcialidad a un juez, que implica deslealtad a los principios fundamentales que gobiernan su ministerio, debe ser cuidadosamente ponderada frente a la grave responsabilidad de quien la formula gratuitamente. (Cánones 9 y 29, Ética.)

Por todo lo anterior se confirman las sentencias apeladas, pero modificándolas en el sentido de que las tres serán cumplidas concurrentemente.

Así lo pronunció y manda el Tribunal y certifica el Secretario. El Juez Asociado Señor Martín emitió voto disidente en parte al cual se unen el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Irizarry Yunqué.

(Fdo.) Ernesto L. Chiesa

*Secretario*

—O—

Voto disidente, en parte, del Juez Asociado Señor Martín al cual se unen el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Irizarry Yunqué.

San Juan, Puerto Rico, a 2 de abril de 1979

Confirmaría la sentencia del tribunal de instancia que condenó al apelante a seis meses de cárcel por infracción al Art. 6 de la Ley de Armas de Puerto Rico, y revocaría la que

lo condenó a seis meses de cárcel en cada una de las infracciones a los Arts. 7 y 32 de la misma Ley.

La Sec. 11 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico dispone que "en todos los procesos criminales el acusado disfrutará del derecho a un juicio rápido y público." El derecho a juicio rápido es pues fundamental en nuestro enjuiciamiento criminal, por ser corolario, como reconocimos en *Pueblo* v. *Opio Opio*, 104 D.P.R. 165, 169–170 (1975), del derecho de todo ser humano "a sentirse libre de la opresión y la preocupación martirizante que genera una acusación injusta."

Con el propósito de regular estatutariamente el derecho a un juicio rápido, las Reglas de Procedimiento Criminal han dividido el procedimiento en dos estadios. Uno, que parte del arresto o citación, hasta la presentación del pliego acusatorio y otro, que parte de dicha presentación y se proyecta hasta el sometimiento a juicio. La Regla 64(n) de las de Procedimiento Criminal ofrece los plazos que han de orientar ambas instancias, los cuales deben interpretarse con laxitud de suerte que "garanticen los derechos del acusado sin excluir los derechos de la justicia pública." *Pueblo* v. *Reyes Herrans*, 105 D.P.R. 658, 660 (1977).

Nada disponen las Reglas, sin embargo, en cuanto al plazo con que cuenta el ministerio público para acudir ante un juez de superior jerarquía cuando en primera instancia el juez que celebra una vista preliminar bajo la Regla 23 hace una determinación negativa, lo que sugería incertidumbre en estas instancias. Para cubrir el vacío existente en la Ley, en *Pueblo* v. *Vélez Castro*, 105 D.P.R. 246, 248 (1976), establecimos término con el siguiente lenguaje:

"A tenor con lo expuesto, es evidente que la vista preliminar en alzada ante el Juez Superior *debió celebrarse* dentro de un término razonable a partir de la resolución del Juez de Distrito determinando que no había causa probable. Consideramos razonable un *término máximo* de 60 días." (Énfasis suplido.)

Así determinamos que el plazo razonable con que cuenta el ministerio público para conseguir *la celebración* en alzada de una nueva vista preliminar no debe exceder 60 días. Cierto es que al momento de procesarse el caso de autos no habíamos nosotros resuelto el caso *Vélez Castro*. No obstante, la celebración en tiempo razonable de una vista preliminar en alzada, incidente que puede resultar en menoscabo del derecho a juicio rápido, es obligación procedente de la Constitución que se impone al ministerio público. *Pueblo* v. *Opio Opio*, 104 D.P.R. 165, 169 (1975). Contra esa norma el fiscal puede oponer válida justificación.

En el caso de autos el fiscal no ha excusado cumplidamente la dilación de noventiseis días para la celebración de la vista ante el Tribunal Superior, que excede por treintiseis días el plazo que estimamos razonable. Su argumento de que no se fijaba entonces un plazo determinado es claramente insuficiente. Su escasa diligencia quedó de manifiesto el día señalado originalmente para la vista preliminar ante el Tribunal Superior, al expresar que no estaba preparado para presentar su prueba. Ello, a pesar de que ochenta días antes había comparecido ante el Tribunal de Distrito con el mismo propósito.

El que no se hubiera precisado a la fecha del señalamiento de la vista preliminar cuál era el plazo razonable para acudir ante una sección superior del Tribunal de Primera Instancia luego de una determinación negativa de causa probable para acusar, no justifica una dilación total de más de tres meses desde la determinación negativa original. El estado de derecho entonces no sugería tal liberalidad.

Con respecto al caso por violación al Art. 6 de la Ley de Armas la situación es distinta. El acusado reclama que se le violó su derecho a juicio rápido, pero esta vez en la modalidad que prescribe que se celebre juicio dentro de los 120 días de radicada la acusación. No tiene razón. El día en que finalmente se señaló el caso para vista, el propio abogado del acu-

sado solicitó posposición, por razón de no hallarse preparado. Más aún, el apelante nunca solicitó en el tribunal de instancia que se desestimara la acusación por dicho cargo bajo la Regla 64 de las de Procedimiento Criminal. Su planteamiento ante nos resulta pues, tardío. *Pueblo* v. *Santi Ortiz*, 106 D.P.R. 67 (1977).

Por estos fundamentos revocaría las sentencias del Tribunal Superior que condenaron al apelante por violar los Arts. 7 y 32 de la Ley de Armas y confirmaría aquella que le condenó por violación del Art. 6 de la misma Ley.